### DAVIDSON v. THE HAWKEYE INS CO.

1. **Fire Insurance**: FORFEITURE BY SALE: FACTS CONSTITUTING SALE. The policy sued on provided that it should immediately be void upon a sale of the premises without the consent of the company. The insured entered into a contract with L., whereby L. agreed to pay him a certain sum for the property,—a small portion in cash, and the rest in deferred payments, and the insured agreed to convey the property to him upon his making all the payments as agreed. But it was also stipulated that if L. should fail to make any payment at the time stipulated the contract should be void, and any payments made should be forfeited. L. took possession under the contract. *Held* that this was a sale which forfeited the insurance. (*Kempton v. State Ins. Co.*, 62 Iowa, 83, distinguished.) REED, J., *dissenting*.

2. **Vendor and Vendee**: CONTRACT FOR SALE: FORFEITURE WAIVED. A vendor of land who has the right to declare the contract forfeited upon the vendee's failure to make payment as stipulated, cannot accept part of a payment and then declare a forfeiture. He must first make demand for the balance of that payment.

3. **Fire Insurance**: FORFEITURE BY CONTRACT OF SALE: RESCISSION OF CONTRACT. A fire insurance policy which has been forfeited by a sale of the premises in violation of its conditions, is not restored by an abandonment of the contract of sale.

*Appeal from Polk Circuit Court.*

SATURDAY, MARCH 19.

ACTION upon a policy of fire insurance. There was a trial to a jury, and verdict and judgment were rendered for the defendant. The plaintiff appeals.

*Guthrie & Maley*, for appellant.

*Phillips & Day*, for appellee.

ADAMS, CH. J.—I. The court gave a peremptory instruction to render a verdict for the defendant. The plaintiff assigns as error the giving of such instruction. The instruction was given upon the theory that the pleadings and evidence showed conclusively that the plaintiff had violated the policy, and forfeited his rights thereunder, before the loss. The policy con-

1. FIRE insurance: forfeiture by sale: facts constituting sale.

tained a condition against selling, conveying or incumbering the property. The defendant contended that the plaintiff violated the condition by entering into a contract of sale, by which contract the purchaser took possession, and the plaintiff received a part of the purchase-money, and retained the legal title, which was to be conveyed upon the payment of the balance. The making of such contract is not denied. The plaintiff, however, denies that the contract was of such a character as to constitute a completed sale.

The building insured was a dwelling house situated upon a small farm in Polk county. After the policy was issued, to-wit, in March, 1885, the plaintiff and one Lint entered into a written contract whereby Lint was to pay the plaintiff for the same $400, of which $50 was to be paid down, and the balance in six payments, the first one of which was to be made January 1, 1886. Lint took possession under the contract, and leased the farm to his son, who cultivated it, and occupied the house as a dwelling until it was destroyed by fire. The contract of sale provided that, if Lint should promptly make all the payments called for by the contract, the plaintiff would execute to him a deed of warranty to the land, but that time should be regarded as of the essence of the contract, and that, if Lint should fail to make any payment at the time stipulated, the contract should be void, and any payments made should be forfeited. Before the first deferred payment became due, the insured property was destroyed.

The precise language of that portion of the policy which is alleged to have been violated is in these words: "In case any such property shall be sold, conveyed or incumbered * * * without the written consent of this company is obtained, * * * this policy shall immediately thereafter be null and void." It is manifest from the above that the policy contemplated that there might be a sale without a conveyance. The provision is the same as if the word "or" had been expressed between the

words "sold" and "conveyed," and as if the policy read: "In case any such property shall be sold or conveyed," etc. In either case the policy would be void. We come, then, to the question as to whether, where one party binds himself unconditionally to pay a certain price for a piece of real estate, and takes possession under the contract, and the other party binds himself to convey the real estate upon the payments being made, and nothing remains to be done but for the party taking possession to make the payments, and for the other to make the deed, such contract constitutes a sale of the real estate, within the meaning of the policy. In answer to this question we have to say that we think it does. Lint was the real owner of the house that was burned. The loss was his loss. The plaintiff lost nothing, unless he needed the house for security. If Lint is responsible, or the property, without the house, is sufficient security for the balance of the purchase-money, the plaintiff's claim can be collected, and he will have all that he would have had if the house had not been burned. If he is allowed to collect the insurance and the purchase-money both, he will profit by the destruction of the property. That the insured shall, by his own voluntary act, come to have an interest in the destruction of the insured property is forbidden, not only by public policy, but by all the maxims of insurance, and is precisely what this defendant attempted to guard against. If the contract had been of that nature that the loss of the house fell upon the plaintiff as owner, and not upon Lint, the case would be entirely different. We can suppose a case where the owner of insured property makes a contract for the sale of it, but has not made a conveyance of the property, nor delivery of possession, but has retained control, and, while under his control and care, the property is destroyed by fire, and the seller cannot complete the contract by making such delivery as the contract contemplates; then the loss of the property would fall upon him, notwithstanding his contract, and for the reason that he is not able to carry it out;

and it might well be said in such case that there was no sale within the meaning of the policy.

The plaintiff relies, in part, upon the fact that in the contract time was made of the essence of the contract. But' that was a mere provision for its termination. The seller might elect to reclaim the property if the buyer failed to pay promptly as he stipulated; but, while the contract subsisted, it appears to us that the relation which each party sustained to the property was not different from what it would have been if the contract had been drawn without the provision as to forfeiture if the payments were not made upon the day they fell due. Until forfeiture, Lint was the owner of the property, in the sense that the loss of the house must fall upon him.

The plaintiff cites *Kempton v. State Ins. Co.*, 62 Iowa, 83, and several other cases. But those cases all differ from the case at bar. In those cases something yet remained to be done by the vendor in addition to the execution of the deed.

We are aware that reasoning is used in some of the cases which might seem to support the plaintiff's position. Take the case of *Turnbull v. Portage Mut. Ins. Co.*, 12 Ohio, 305, (314.) In that case the court said: "This case turns mainly on the question as to whether the plaintiffs had an insurable interest in the premises insured at the time the loss occurred." Now, it is not to be denied that any vendor of real estate who has not received full payment, and retains the legal title for security, has an insurable interest. But it does not follow, we think, that there cannot be a sale of real estate where the legal title has not been conveyed, and a part of the purchase-money remains unpaid. The very theory that the vendor who retains the legal title, with a right to enforce the payments of the purchase-money, holds the legal title for security, is based upon the idea that there has been a sale; and in such cases it is manifest that a loss by fire must fall upon the purchaser *as owner*, and affects the seller only as it impairs his security. The seller may, indeed, have an insur-

able interest, but his interest is substantially that of a mort-gagee, which is quite different from a proprietary interest. Different rates are charged; and in case of the insurance of a mortgage interest, and payment to the mortgagee of a loss, a right of subrogation accrues to the company to the extent of the amount paid. The law will not allow an insured mortgagee to be subjected to the temptation that he would be subjected to if he had a right to collect his insurance, and at the same time to collect and hold his whole mortgage debt besides.

There is a fundamental and vicious error in the doctrine contended for by the plaintiff. He would collect the insurance upon the theory that there has been no sale, and would collect his purchase-money upon a theory which is just the reverse. If the doctrine for which he contends is correct, he would be able to collect the full amount of his policy, though only a single dollar of the purchase-money remained unpaid.

II. The plaintiff assigns as error the exclusion of certain evidence. He offered to prove that only a part of the payment was made, which, by the terms of the contract, was to be paid at the time it should take effect. The court excluded the evidence as immaterial. It was, of course, the right of the plaintiff to insist upon the whole of that payment, or that the contract should not take effect. But the contract provided that time was of the essence of the agreement, and that all payments made might be forfeited if the buyer made any default. Now, the plaintiff could not be allowed to accept partial payment, and say at the same time that, the payment being partial, the contract is void, and the partial payment thus made is forfeited. The very act of accepting partial payment was a waiver of strict performance as to the balance of that payment. No other theory would consist with good faith. The acceptance, to be sure, was not a waiver of the payment of the balance, and the plaintiff, unless there was an agreement to the contrary, might prob-

*2. VENDOR and vendee: contract for sale: forfeiture waived.*

ably demand it at any time. But, after accepting partial payment, we think that the plaintiff should have demanded the balance before he could properly claim that Lint was in default. We think that the contract took effect, and that the contract, together with the delivery of possession, constituted a sale.

III. The plaintiff assigned as error the exclusion of other evidence. He offered to show that before the loss the

3. FIRE insur- parties had abandoned the contract, but the court
ance: for-
feiture by excluded the evidence as immaterial. If the
contract of
sale: rescis- policy had been forfeited by the making of the
sion of con-
tract. contract, we do not think that we could hold that
it would be waived by an abandonment of the contract. Suppose that the plaintiff had forfeited the policy by a sale and conveyance; no one would, we think, claim that the policy would be revived by a repurchase and reconveyance. Yet the principle involved would be the same.

We see no error in the ruling of the circuit court.

AFFIRMED.

REED, J., (*dissenting*.) The contract between plaintiff and Lint was an executory agreement for the sale and conveyance of the property. Plaintiff was bound, upon the strict performance by Lint of his undertaking, to convey the land. But a failure by the latter to pay any installment of the purchase-price at the stipulated time would work a forfeiture of all interest in the land, as well as of all sums paid under the contract; and the agreement provided that upon such failure the vendee would surrender possession of the premises. What was the extent of the right and interest acquired by Lint under this contract? I think he did not acquire the ownership of the property, but the right acquired was the right to be invested with the ownership when he performed his undertakings in the contract. Until that was done, both the title and ownership remained in plaintiff; for, by the terms of the agreement, Lint would be entitled to be

invested with the property only upon a strict performance of its condition, and, upon his failure to perform any of them, nothing further was required to be done for the establishment of a perfect right in plaintiff. Now, what the parties provided against by the clause in the policy quoted in the majority opinion, was such disposition of the property as would divest the plaintiff of the title and ownership of it; and the uniform holding of the authorities is that the policy is not defeated, under a provision to that effect, by an executory contract for the sale of the property. *Hill v. Cumberland Valley M. P. Co.*, 59 Pa. St., 474; *Insurance Co v. Updegraff*, 21 Id., 513; *Insurance Co v. Stewart*, 19 Id., 45; *Trumbull v. Insurance Co.*, 12 Ohio, 305; *Browning v. Insurance Co.*, 71 N. Y., 508; *Washington Ins. Co. v Kelley*, 32 Md., 421; *Kempton v. State Ins. Co.*, 62 Iowa. 83; Wood Ins., § 329; May Ins., § 267.

In *Kempton v. State Ins. Co.*, it was held that the policy which contained a provision similar to that in question was not defeated by a contract for the sale of the property. The only difference between that case and this lies in the fact that the purchaser in that was not entitled to the possession of the property until certain payments were made, and the vendor was in possession at the time of the loss, while in this the purchaser was in possession when the fire occurred. But this is not material. The ground of the holding in that case is that the insured was not divested of the ownership of the property by the contract, and that is the case here.

In my judgment, the holding of the majority is in conflict with that case, as well as with the current of authorities on the subject.