**IOWA FAIR PLAN, Appellee,**

v.

**UNITED STATES of America, INTERNAL REVENUE DEPARTMENT, Appellant, State of Iowa, Department of Revenue, Penelope Gerhart and Charles Gerhart, Appellees.**

No. 2–58280.

Supreme Court of Iowa.

Sept. 21, 1977.

Scott E. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Crombie J. D. Garrett and Wynette J. Hewitt, Attys., Tax Division, Dept. of Justice, Washington, D. C., Allen L. Donielson, U. S. Atty. and James R. Rosenbaum, Asst. U. S. Atty., Des Moines, for appellant.

Richard C. Turner, Atty. Gen., George W. Murray, Sp. Asst. Atty. Gen., and Gerald A. Kuehn, Asst. Atty. Gen., for appellee State of Iowa.

McCORMICK, Justice.

This appeal presents a question of tax lien priority. The Gerharts owned a commercial building in Mingo, mortgaged to Mingo Trust & Savings Bank and insured under two policies by Iowa Fair Plan. As a result of three assessments for taxes owed by Charles Gerhart, the last on July 5, 1973, the State of Iowa held a $3,975.26 lien against the building. Based on an assessment of August 15, 1973, the United States held a $8804.97 lien against it. The building was destroyed by fire on August 21, 1973. Each government claimed priority over the other in the fire insurance proceeds. Iowa Fair Plan brought an interpleader action against all claimants to the fund. Each government moved for summary judgment on the issue of lien priority. The trial court sustained the priority of the lien of the State of Iowa in the interpleaded fund and entered summary judgment accordingly. The United States appealed. We reverse.

The liens arose under similar statutes. The federal lien is based on 26 U.S.C. § 6321 which provides:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

The state lien is based on § 422.26, The Code, 1973, which provides in part:

Whenever any taxpayer liable to pay a tax and/or penalty imposed refuses or neglects to pay the same, the amount * * * shall be a lien in favor of the state upon all property and rights to property, whether real or personal, belonging to said taxpayer.

Thus the federal and state tax lien statutes each provide for liens "upon all property and rights to property, whether real or personal, belonging to * * * [the taxpayer]."

State law determines whether and to what extent the taxpayer has "property" or "rights to property" to which these liens attach. However, once a federal tax lien has attached to a taxpayer's state-created property interests, the question of priority of competing liens is determined by federal law. The effect of 26 U.S.C. § 6321 is to attach federally defined consequences to rights which exist under state law. *United States v. Durham Lumber Company,* 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371

(1960); *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958).

■ One federally defined consequence is that a state lien is subordinate to a federal tax lien on specific property unless it became choate before the federal tax lien. Choateness is determined under federal law. *United States v. Pioneer American Ins. Co.,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *Fore v. United States,* 339 F.2d 70 (5 Cir. 1964), cert. denied, 381 U.S. 912, 85 S.Ct. 1532, 14 L.Ed.2d 433 (1965). To be choate a lien must be certain as to amount, identity of the lienor, and the property subject to the lien. *United States v. City of New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). Although a taxpayer's property may be born with a tax lien on it, it is necessary that the property right exist before the lien attaches to it. *Wolverine Ins. Co. v. Phillips,* 165 F.Supp. 335, 353 (N.D.Iowa 1958), appeal dismissed, 283 F.2d 518 (8 Cir. 1960). Because of this, a lien may be choate as to property of the taxpayer which is in existence, but it is inchoate as to property rights which have not yet arisen. *United States v. L. R. Foy Construction Co.,* 300 F.2d 207 (10 Cir. 1962).

■ In the present case the state tax lien attached to property interests of Charles Gerhart prior to and on July 5, 1973. The federal tax lien attached to his property on August 15, 1973. The Gerhart building was standing on those dates. Thus, as to it, the state's lien was prior in time and therefore first in right. *United States v. Vermont,* 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964). The Gerharts also had their fire coverage with Iowa Fair Plan on the dates the liens were filed. However, the liens did not attach to the fire insurance policies because a fire insurance policy is not "property" or a "right to property" within the meaning of either lien statute. Under Iowa law it is simply a contract for indemnity. *McWilliams v. Farm and City Mutual Ins. Assn.,* 248 Iowa 233, 80 N.W.2d 320 (1957). It does not have a cash surrender value. Cf. *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). No value can be realized from it until the contingency making its proceeds available occurs.

■ If the contingency does occur, the insured immediately acquires a property interest in the insurance proceeds which is separate and distinct from the insured premises and the policy. Pre-existing tax liens attach immediately to the new property. This principle was explained and applied in *Home Insurance Company v. B. B. Rider Corporation,* 212 F.Supp. 457, 462 (D.N.J.1963):

\* \* \* Where it is entirely uncertain whether the conditional promise to pay will ever become unqualified and enforceable, the interest of a party to the contract is purely contingent, and therefore not "property and rights to property" to which a tax lien under § 6321 could attach. [citations] Until the fire occurred no lien could arise in favor either of the government or of any other claimant upon the interest, whatever it was, of the taxpayer in either of the fire insurance policies.

\* \* \* The moment the fire occurred, the agreement to indemnify embodied in the policies ripened into a chose in action in favor of the insured, which constituted "property or right to property" to which the previously inchoate tax lien immediately attached.

See also *Randall v. Colby,* 190 F.Supp. 319, 326–327 (N.D.Iowa 1961); *Continental Finance, Inc. v. Cambridge Lee Metal Co.,* 100 N.J.Super. 327, 241 A.2d 853 (1968), affirmed 105 N.J.Super. 406, 252 A.2d 417 (1969), affirmed 56 N.J. 148, 265 A.2d 536 (1970).

■ Both liens had attached to Charles Gerhart's property before the Gerhart building was destroyed by fire on August 21, 1973. The Gerharts' interest in the insurance proceeds came into being at that time. Therefore the liens attached simultaneously to those proceeds. The liens became choate in the new property interest at

the same time. Because the state lien did not become choate before the federal lien, the federal lien has priority in the interpleaded fund. The trial court erred in holding otherwise.

REVERSED.

MASON, RAWLINGS, LeGRAND and REYNOLDSON, JJ., concur.

REES, J., MOORE, C. J., and UHLENHOPP and HARRIS, JJ., dissent.

REES, Justice (dissenting).

I cannot agree with the conclusions reached by the majority and respectfully dissent.

I. The issue on which this appeal rests is the nature and character of the insurance proceeds as property. If the proceeds are property acquired after the attachment of the liens (that is, on the date of the fire which destroyed the building) the federal law primes the simultaneously attached state lien. *United States v. New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). If the liens survive the conversion of form of the property, the date of the attachment of the liens to the original property would be determinative, and the State's lien, being first in time, would also be first in right. *United States v. Vermont,* 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964).

II. The statutes involved here are, as the majority asserts, 26 U.S.C. § 6321 and § 422.26, The Code (Iowa) 1973.

The United States Department of Revenue concedes that the extent and nature of the taxpayer's interest in property is determined by reference to state law. *Aquilino v. United States,* 363 U.S. 509, 514, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Durham Lumber Co.,* 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); *United States v. Hunt,* 513 F.2d 129 (10th Cir. 1975).

The law respecting insurance clearly addresses the issue of the right of a mortgagee to proceeds of a policy obtained by and for the benefit of the mortgagor, who has no obligation to insure. The proceeds are not subject to the mortgage, and the mortgagee must secure his debt through judicial proceedings. See 46 C.J.S. Insurance § 1140 at 19, and see cases collected in the Annotation at 9 A.L.R.2d 299. This doctrine has developed from situations in which the creditor has a mortgage or lien on a certain item of property. In the instant case, the situation may not be analogous in that the tax liens attached to all property of the taxpayer, including property acquired subsequent to the filing of the lien. Tax liens are super-priority liens which prime the liens of all unperfected creditors.

III. I am persuaded the tax liens are more analogous to perfected security interests under the Uniform Commercial Code than to the interests of mortgagees or lien creditors on specific property. The provisions of § 554.9306, The Code (Iowa) allows a secured party to continue a security interest in insurance proceeds. The date of perfection of the interest in the proceeds is the date of perfection of the interest in the collateral. The proceeds are collateral under the Uniform Commercial Code, not after-acquired property. See U.C.C. 9–306(1); 68 Am. Jur. 2d, Secured Transactions § 186 at 1044.

Even prior to the adoption of the Uniform Commercial Code, a conversion of property might permit the lien to attach to proceeds. "Unless there is an agreement to the contrary, it [a lien] sometimes attaches to money or other property into which such property has been changed or converted, provided it is ascertainable." 53 C.J.S. Liens § 7 at 852. See *Application of Diaz,* 192 Misc. 212, 80 N.Y.S.2d 504, 506 (1948), where the court said:

"(A)n award made in a condemnation proceeding is deemed personal property into which real property taken has been converted by operation of law (citations), and is subject to attachment.

" 'The general rule is that a lien upon property attaches to whatever the property is converted into, and is not destroyed by changing the nature of the subject * * * it follows its subject,

and cannot be shaken off by a change of form or substance. It clings to any property or money into which the subject can be traced * * *.' (citation)."

There is still another context wherein, under the law of this jurisdiction, I find insurance proceeds take the place of insured property. The exemption from execution survives the destruction of exempt property, and continues for a reasonable time in the proceeds of an insurance policy. *Reynolds, et al. v. Haines*, 83 Iowa 342, 49 N.W. 851 (1891).

I also note that in *United States v. Bess*, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958), the federal government advanced a surviving lien theory in argument, and the United States Supreme Court accepted the government's position that a tax lien continued through the conversion of a life insurance policy with cash surrender value to proceeds after taxpayer's death. The court held that taxpayer had the right to enjoy the cash surrender value of the policy during his life, thus subjecting it to the federal tax lien. After the death of the taxpayer the beneficiary argued that the property right was extinguished. The Supreme Court found that the portion of the proceeds equal to the cash surrender value at the taxpayer's death remained subject to the federal tax lien, even though it was converted from a contractual interest to the policy proceeds.

IV. In this case the insured (Gerhart) had a right to enjoy the property, to sell it, or to borrow against it. He had no duty to insure it, just as the taxpayer in *Bess, supra,* had no duty to insure his life. The insured protected his property by purchasing insurance with loss payable to the mortgagee in the event of its destruction in keeping with a standard mortgage clause appended to the policy.

I would hold that the tax liens survived the involuntary conversion of Gerhart's property from a building and contents and attached to the identifiable insurance proceeds. In my judgment the trial court properly found the tax lien of the Department of Revenue of the State of Iowa was prior to the lien of the Internal Revenue Department of the United States in the proceeds of the insurance from the fire loss of the building insured.

I would affirm the trial court.

MOORE, C. J., and UHLENHOPP and HARRIS, JJ., join this dissent.